UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CRYSTAL MARSCEILL,

                Plaintiff,

v.
                                          17-CV-895(HKS)

CAROLYN W. COLVIN, Acting Commissioner
of Social Security,

                Defendant.

## DECISION AND ORDER

Pursuant to 28 U.S.C. § 636(c), the parties have consented to have the undersigned conduct any and all further proceedings in this case, including entry of final judgment. Dkt. No. 16. Crystal Marsceill ("Plaintiff"), who is represented by counsel, brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. Nos. 10, 15.

## BACKGROUND

Plaintiff filed an application for SSI and DIB in August 2011, alleging disability commencing October 19, 2010. T. 119.[1] Plaintiff claimed to be disabled

---

[1] Citations to "T. __" refer to the pages of the administrative transcript, which appears at Docket No. 7.

because of severe allergies, fibromyalgia, bipolar disorder, post-traumatic stress disorder (PTSD), cystitis, depression, and anxiety. T. 148. Her initial application was denied, and at Plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ") on February 4, 2013. T. 27-61; 66-69. On March 15, 2013, the ALJ issued a decision finding Plaintiff not disabled. T. 11-22. The Appeals Council denied Plaintiff's request for review on July 25, 2014, making the ALJ's determination the final decision of the Commissioner. T. 1-3.

Plaintiff then filed her first civil action seeking review of the Commissioner's decision. *See Marsceill v. Comm'r of Soc. Sec.*, 14-CV-797(WMS). In that case, the Hon. William M. Skretny granted Plaintiff's motion for judgment on the pleadings and remanded this case for further administrative proceedings. T. 759-68. Judge Skretny found that the ALJ had committed two related errors, each of which provided an independent basis for remand. First, Judge Skretny found that the ALJ had improperly "substitute[d] his own medical opinion for that of [plaintiff's treating] physician" by "evaluat[ing] raw medical data" to decide Plaintiff's residual functional capacity. T. 765. Second, Judge Skretny found that the ALJ failed to consider the necessary factors when he declined to give controlling weight to the opinion of Plaintiff's treating physician. T. 766.

On remand, a different ALJ, Lynette Gohr, conducted a second *de novo* hearing and reviewed the record from Plaintiff's first hearing. On June 29, 2017, ALJ Gohr issued a decision that again found plaintiff "not disabled." T. 582-97. When the

2

Appeals Council declined to assume jurisdiction over the remanded case, the ALJ's decision became the Commissioner's final decision.  *See* 20 C.F.R. § 404.984(a).  This action followed.

**The ALJ's Decision on Remand**

On remand, ALJ Gohr applied the familiar five-step sequential analysis, as contained in the administrative regulations created by the Social Security Administration ("SSA").  *See* 20 C.F.R. §§ 404.1520, 416.920; *Lynch v. Astrue*, No. 07-CV-249, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008) (detailing the five steps).  The ALJ first found that Plaintiff had not engaged in substantial gainful activity since October 19, 2010, her alleged onset date.  T. 584.  The ALJ then found that Plaintiff had several severe impairments:  bipolar disorder, attention deficit hyperactivity disorder (ADHD), social anxiety, and fibromyalgia.  T. 584.  Next, the ALJ concluded that Plaintiff's impairments did not, either individually or in combination, meet or equal the listings set forth at 20 C.F.R. § 404, Subpt. P, Appx. 1.  Before moving to the fourth and fifth steps of the Commissioner's disability analysis, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to:

> [P]erform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except can occasionally climb ramps and stairs, never climb ladders, ropes or scaffolds; frequent stoop, kneel, crouch and crawl; frequent but not constant fine and gross manipulation with the bilateral upper extremities. In addition, limited to simple routine and repetitive tasks; limited to simple work-related decisions; minimal changes in work routines and processes and occasional interaction with supervisors, co-workers and the public.

T. 587.

To support this RFC, the ALJ found that the "objective medical evidence does not reflect any severe limitations beyond" the RFC, and she also noted that Plaintiff's reported "activities of daily living" — for example, driving, personal care, food preparation, cleaning, laundry, grocery shopping, and child care — "are inconsistent with disabling symptoms and limitations." T. 594. The ALJ also discounted Plaintiff's allegations about the severity of her symptoms because Plaintiff did not follow up on the recommendation that she attend treatment for drug and alcohol dependency. *Id.* Finally, the ALJ assigned "little weight" to the opinion of Plaintiff's treating physician, Nashiha Shahid, M.D., because, in the ALJ's view, her opinion was "not consistent with the record, . . . performance of significant activities of daily living," and an approximate three-year treatment gap. *Id.* Finally, the ALJ noted that Dr. Shahid "had an incomplete history, as she was not aware of [Plaintiff's] drug use and activities." T. 594-95 (citations omitted).

Continuing to the fourth step of the disability analysis, the ALJ found that Plaintiff was unable to perform her past work of waitressing. Finally, the ALJ concluded that, "[c]onsidering the claimant's age, education, work experience, and [RFC]," Plaintiff could work as a "marker I," a mail clerk, or a cafeteria attendant. T. 582-597.

## DISCUSSION AND ANALYSIS

**Scope of Judicial Review**

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Section 405(g) provides that the District Court "shall have the power to enter, upon the pleadings and transcript of the record, a

4

judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2007). The section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record.

Section 405(g) limits the scope of the Court's review to two inquiries: whether the Commissioner's findings were supported by substantial evidence in the record as a whole and whether the Commissioner's conclusions were based upon an erroneous legal standard. *See Green–Younger v. Barnhart*, 335 F.3d 99, 105–106 (2d Cir. 2003). Substantial evidence is "more than a mere scintilla." *Moran v. Astrue,* 569 F.3d 108, 112 (2d Cir. 2009). "It means such *relevant* evidence as a *reasonable* mind might accept as adequate to support a conclusion." *Id.* (emphasis added and citation omitted). The substantial evidence standard of review is a very deferential standard, even more so than the "clearly erroneous" standard. *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 447-48 (2d Cir. 2012) (citing *Dickinson v. Zurko,* 527 U.S. 150, 153 (1999)).

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "'to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983)) (per curiam). If there is substantial evidence for the ALJ's determination, the decision must be upheld, even if there is also substantial evidence for the plaintiff's position. *See Perez v. Chater,* 77 F.3d 41, 46-47 (2d Cir. 1996); *Conlin*

5

*ex rel. N.T.C.B. v. Colvin*, 111 F. Supp. 3d 376, 384 (W.D.N.Y. 2015).  Likewise, where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

**Judgment on the Pleadings**

The parties have cross-moved for judgment on the pleadings.  Dkt. Nos. 10, 15.  Plaintiff's primary argument is that the ALJ erred "by not properly evaluating [her] fibromyalgia."  Dkt. No. 10-1, p. 21.  Second, Plaintiff argues that the ALJ improperly discounted the opinion of Plaintiff's treating physician.  *Id.* at 23.  Third, Plaintiff argues that the ALJ's RFC was not based on substantial evidence because the ALJ "explicitly rejected medical opinions from" Plaintiff's treating physicians and "used her own lay opinion of the medical records to craft an RFC statement."  *Id.*  Finally, Plaintiff claims that the ALJ improperly "cherry-picked evidence" in arriving at her RFC.  *Id.* at 33.

The Commissioner requests that her determination be affirmed as the ALJ's decision was supported by substantial evidence and is free of legal error.  Dkt. No. 15-1.  For the reasons that follow, this Court denies Plaintiff's motion for judgment on the pleadings and grants the Commissioner's motion seeking the same.

**The ALJ's Evaluation of Plaintiff's Fibromyalgia**

Social Security Ruling (SSR) 12-2P governs how an ALJ evaluates fibromyalgia in disability claims.  SSR 12-2P (SSA July 25, 2012).  Generally, a person

is considered to have a medically determinable impairment ("MDI") of fibromyalgia ("FM") if she has all three of the following: a history of widespread pain that has persisted for at least 3 months; at least 11 positive tender points on physical examination found bilaterally and both above and below the waist at 18 enumerated sites on the body; with "[e]vidence that other disorders that could cause the symptoms or signs were excluded." SSR 12-2P. In this case, ALJ Gohr determined that Plaintiff's FM was a severe impairment but found that she retained the RFC to perform light work with some restrictions.

Plaintiff contends that the ALJ "disregarded [her] testimony regarding her [FM] symptoms," and failed to take into consideration that FM is a disabling impairment with "no objective tests which can conclusively confirm the disease." Dkt. No. 10, pp. 21. This Court does not agree. In her decision, ALJ Gohr explicitly acknowledged Plaintiff's testimony that she has had FM since 2010, that she had residual pain in her legs, back, shoulders, and upper arms, but that medications gave her "70% improvement" in her FM symptoms. T. 589. Although Plaintiff testified that she became "uncomfortable" if she stood for more than 5 to10 minutes, the ALJ found that other evidence did not support a standing restriction. T. 589, 714. Specifically, the ALJ noted Plaintiff's testimony that at various times over the alleged period of her disability she drove, performed personal care, prepared food, cleaned, did laundry, grocery shopped, took her children to the pediatrician, and visited her father several times a week. T. 594.

The ALJ also correctly noted that although she diagnosed Plaintiff with FM, Dr. Shahid (Plaintiff's treating physician) "never fleshed out the tender points to exact locations." T. 594. Rather, Dr. Shahid noted only that she observed an unspecified number of tender points during otherwise unremarkable physical examinations. T. 414, 417, 419, 594. In this regard, Dr. Shahid's diagnosis did not meet the evidentiary standards of SSR 12-2P, indicating that a claimant should have at least 11 tender points bilaterally and above and below the waist to prove an MDI of FM. SSR 12-2P. Plaintiff is correct that FM sometimes defies objective findings. Dkt. No. 10, p. 21. However, this only becomes relevant when a claimant's alleged symptoms are worse than what the objective medical findings would suggest. Here, Plaintiff admitted that medications gave her 70% relief from her pain, which was generally consistent with having some unspecified number of tender points in unidentified areas. This falls far short of the requirements for a MDI of FM under the Ruling.

Plaintiff bears the burden of proving that she is disabled. *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008). Neither Plaintiff's testimony about her daily activities nor Dr. Shahid's findings demonstrate that she was disabled by her FM. Accordingly, this Court finds that the ALJ properly evaluated Plaintiff's FM in determining Plaintiff's RFC.

**The ALJ's Rejection of Plaintiff's Treating Physician's Opinions**

Plaintiff next contends that the ALJ erred in assigning "little weight" to the opinion of Dr. Shahid, without providing "good reasons" in violation of the treating physician rule, and that the error warrants a remand. The 'treating physician' rule

8

requires ALJ's to give "deference to the views of the physician who has engaged in the primary treatment of the claimant." *Burgess*, 537 F.3d at 128 (quotation marks omitted). Specifically, "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Id.* (quoting 20 C.F.R. § 404.1527(d)(2)). "Medically acceptable clinical and laboratory diagnostic techniques include consideration of a patient's report of complaints, or history, as an essential diagnostic tool." *Id.* (quotation marks and brackets omitted).

An ALJ may decline to give "controlling" weight to the opinion of a claimant's treating physician, but must "consider several factors in determining how much weight [the physician's opinion] should receive," *Id.* at 129, including:

> (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

*Ecklund v. Comm'r*, 349 F. Supp. 3d 235, 242 (W.D.N.Y. 2018) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)).

If an ALJ decides to not give "controlling" weight to a claimant's treating physician, "the ALJ must comprehensively set forth his reasons for the weight assigned to a treating physician's opinion." *Burgess*, 537 F.3d at 129 (quotation marks omitted). The ALJ need not "explicitly walk through" the factors identified above, "so long as the Court can conclude that the ALJ applied the substance of the treating physician rule."

9

*Eckland*, 2018 WL 6039391, at *4 (quotation marks omitted). Nonetheless, "[f]ailure to provide . . . good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand." *Burgess*, 537 F.3d at 129-30 (quotation marks omitted). Because the "'good reasons' rule exists to ensure that each denied claimant receives fair process, an ALJ's failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight given denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based on the record." *McCarthy v. Colvin*, 66 F. Supp. 3d 315, 323 (W.D.N.Y. 2014) (quotation marks and citations omitted). Of course, the ALJ's reasons for discounting a treating physician's opinion must also be "supported by [specific] evidence in the case record." *Id.* at 323 (quotation marks omitted).

Dr. Shahid assessed Plaintiff in September 2011, December 2011, and June 2012. T. 412, 429-33, 482-84. Each time, Dr. Shahid concluded that Plaintiff could not work due to FM and at least one mental disorder (bipolar disorder with depression in September 2011, bipolar with depression and dissociative disorder in December 2011, and bipolar with depression June 2012). T. 412, 429-33, 482-84.

The ALJ gave numerous reasons for rejecting Dr. Shahid's conclusions that Plaintiff was disabled by her physical and mental impairments. First, she found that they were not supported by the medical evidence, including Dr. Shahid's own treatment notes. In rejecting that Plaintiff's symptoms were as intense, persistent, and limiting as she claimed, the ALJ found that "the treatment records of Dr. Shahid show very few positive findings on examinations" and reveal "generally quite benign" mental health

10

examinations. T. 594. As noted above, the ALJ also found Dr. Shahid's failure to flesh out tender points to exact locations undermined her conclusion that Plaintiff was disabled by FM, as did Dr. Shahid's frequent notes that Plaintiff's medications were working well. T. 594. That Plaintiff reportedly drove, prepared food, did laundry, grocery shopped, took her children to the pediatrician, went to church with her grandmother, and visited her father several times a week (prior to his November 2011 death) also undercuts Dr. Shahid's conclusion that Plaintiff was disabled.

The ALJ also noted that Plaintiff ceased treating with Dr. Shahid for a significant period of time. T. 594-95. Aside from two emergency room visits and medical care she received while incarcerated, Plaintiff received little medical treatment from 2013 through 2016. T. 593, 1028. This indicates that Plaintiff's symptoms were not as severe as Dr. Shahid concluded. *Diaz-Sanchez v. Berryhill*, 295 F. Supp. 3d 302, 306 (W.D.N.Y. 2018) ("Where, as here, a claimant has sought little-to-no treatment for an allegedly disabling condition, his inaction may appropriately be construed as evidence that the condition did not pose serious limitations.")

The ALJ also took issue with the fact that Dr. Shahid was totally unaware that Plaintiff was actively using cocaine in 2011 and 2012, when the doctor diagnosed her with bipolar disorder and dissociative disorder. T. 594-95. Indeed, the record shows that one of Plaintiff's family members contacted her therapist, Randall Seigel, LCSW-R, in August of 2011 to report that Plaintiff was "using crack cocaine heavily," after Plaintiff missed or cancelled numerous appointments. T. 355, 358. During her April 5, 2017 testimony, Plaintiff admitted that she never told Dr. Shahid about her drug

11

use (T. 702), which as a practical matter, would have impacted the doctor's assessment of Plaintiff's alleged mood disorder. In this regard, the ALJ was correct that Dr. Shahid did not have a complete picture of Plaintiff's health when she issued her opinions regarding her limitations and whether they were permanent. This is yet another "good reason" for the ALJ to reject Dr. Shahid's opinion.

It is, in fact, the role of the ALJ to compare specific medical opinions against the record as a whole, and to reject those opinions that are inconsistent with the evidence. *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 7-8 (2d Cir. 2017) (holding that the ALJ did not violate the "treating physician" rule, where ALJ determined that the treating doctor's treatment notes often stated that the claimant's mood was "stable" or "good," contradicting the doctor's restrictive RFC assessment).[2] That is exactly what ALJ Gohr did here. Moreover, this Court finds that the ALJ offered legally sound reasons for rejecting Dr. Shahid's opinions.

**Substantial Evidence Supports the ALJ's RFC Findings**

Plaintiff contends that the ALJ's findings regarding Plaintiff's physical RFC were unsupported because "she rejected all available medical opinion evidence . . . ." Dkt. No. 10-1, p. 29. However, an ALJ is not required to determine RFC based on a

---

[2] Citing to Judge Skretny's 2015 opinion, *Marsceill v. Colvin*, 14-CV-797S, 2015 WL 7573239 (W.D.N.Y. Nov. 25, 2015), Plaintiff argues that "this Court has already held that Dr. Shahid's opinions were consistent with . . . the rest of the record." Dkt. No. 10-1, p. 27. However, the new ALJ decision, at issue here, considered evidence that did not exist in 2015, including Plaintiff's testimony that Dr. Shahid had no idea that she was using cocaine in 2011 and 2012. Moreover, the period covered by the new decision covers approximately four more years during which Plaintiff sought minimal treatment. T. at 22, 597. This Court is not compelled to reach the same conclusion on a substantially different administrative record.

particular medical opinion. *Wilson v. Colvin*, No. 6:16-CV-06509-MAT, 2017 WL 2821560, at *5 (W.D.N.Y. June 30, 2017) ("[T]he fact that an RFC assessment does not correspond exactly to a medical expert's opinion in the record does not mean that the RFC assessment is "just made up[.]"). Rather, an RFC is to be based on all of the relevant medical evidence in the record. *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.").

Finally, Plaintiff argues that the ALJ rejected and credited portions of Licensed Clinical Social Worker Lisa Uzarkowski's mental health assessment of Plaintiff, "cherry-picking" evidence showing that Plaintiff was not as restricted mentally. It is true that the ALJ rejected Ms. Uzarkowski's general conclusion Plaintiff was unable to work. T. 594. However, the issue of whether Plaintiff was disabled is an administrative issue reserved to the Commissioner. *See* 20 C.F.R. §§04.1527(d) and 416.927(d). With respect to the functional findings, the ALJ concluded that Plaintiff's activities of daily living were inconsistent with Ms. Uzarkowski's opinion that Plaintiff was "very limited" in areas such as maintaining attention and concentration, or functioning in a work setting at a consistent pace. T. at 594. The ALJ also noted that like Dr. Shahid, Ms. Uzarkowski was unaware that Plaintiff was abusing cocaine (T. at 594, 702), when she opined on Plaintiff's attentiveness, concentration, and ability to function in a work setting.

13

This Court finds that the record as a whole supports ALJ Gohr's assessment that Plaintiff could perform light work involving limited postural movements and no more than frequent manipulation or reaching, and could perform simple, routine, repetitive tasks involving simple work-related decisions, minimal changes in routines and processes, and no more than occasional interacting with supervisors, co-workers, and the public.  T. at 587.  This RFC properly accounts for Plaintiff's FM, bipolar disorder, ADHD, and social anxiety.

## **CONCLUSION**

For the reasons stated herein, the Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is hereby DENIED, and the Commissioner's motion for judgment on the pleadings, Dkt. No. 15, is hereby GRANTED.  The Clerk of the Court is directed to close this case.

**SO ORDERED.**

DATED:    Buffalo, New York
            March 6, 2019

                                            *s/ H. Kenneth Schroeder, Jr.*
                                            **H. KENNETH SCHROEDER, JR.**
                                            **United States Magistrate Judge**